DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| URIAS DESIR, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| vs. | )   Civil No. 2007/97 |
| | ) |
| HOVENSA, L.L.C., | ) |
| | ) |
|    Defendant. | ) |

AMBROSE, Senior District Judge

### OPINION AND ORDER OF COURT

The background of this case is well-known to the parties and I repeat it only as necessary here. Plaintiff, Urias Desir, a black West Indian male, filed an employment discrimination complaint against his employer, Defendant, Hovensa, L.L.C., based on race and national origin, for failure to promote in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 10 V.I.C. § 3. (ECF No. 1). Plaintiff also purports to assert claims for disparate pay, disparate impact race discrimination, racially hostile work environment, defamation, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, and punitive damages. Defendant filed a Motion for Summary Judgment[1] seeking a dismissal of Plaintiff's claims with prejudice. (ECF No. 82). Also pending is Defendant's

---

[1] In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir. 1987). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324. Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988) (quoting Celotex, 477 U.S. at 322).

1

Supplemental Motion for Summary Judgment on Plaintiff's disparate pay claim. (ECF No. 112). After careful review, Defendant's motion for summary judgment is granted in part and denied in part and Defendant's Supplemental Motion for Summary judgment is denied as set forth more fully below.

I.     **Disparate Treatment – Failure to Promote – Title VII**

Plaintiff alleges that Hovensa unlawfully failed to promote him to the position of Tank Field Superintendent[2] because of his race (Black) and his national origin (West Indian). Title VII race and national origin discrimination claims are evaluated under the familiar burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, the plaintiff has the burden of proving by a preponderance of the evidence a *prima facie* case of unlawful discrimination. If the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for adverse employment action. Id. at 802; Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). If the defendant carries this burden, the plaintiff must then show the legitimate reasons offered by the defendant were not the true reasons, but were a pretext for discrimination. See Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).

Plaintiff contends that during his interview for the Dock Superintendent position, he told Complex Manager Alberto Van Gurp that he had learned that the Tank Field Superintendent position was going to be open soon and that he felt like he was more qualified and better suited

---

[2] Defendant makes reference to both the Dock Superintendent and the Tank Field Superintendent positions. (ECF No. 1, ¶¶ 17-19). Although Plaintiff avers in the Complaint that Hovensa discriminatorily failed to promote him to both positions as a result of his race and national origin, his arguments in his summary judgment briefs focus on discrimination in the Tank Field Superintendent position. (ECF No. 93, p. 11-18). Plaintiff denies in response to Defendant's statement of material facts that he is no longer pursuing the Dock Superintendent claim, but he testified in his deposition, and argues in his brief and counter-statement of material facts, that during his interview for the Dock Superintendent position, he told Complex Manager Alberto Van Gurp that he had learned that the Tank Field Superintendent position was going to be open soon and that he felt like he was a better fit for and more interested in that position. (ECF No. 83-1 (Desir Dep. at 72-73); No. 93, p. 2; No. 94, ¶¶ 19-20). It also is undisputed that the candidate selected for the Dock Superintendent position was a black, West Indian employee. (ECF No. 94, ¶ 3). Because the record does not support a disparate treatment argument regarding the Dock Superintendent position, I address only the Tank Field Superintendent position herein.

2

for that position. He thereafter applied for the open Tank Field Superintendent position but was not even granted an interview. (ECF No. 93, p. 2). Hovensa instead gave the position to a white, state-side male, Michael McDonald. After the Tank Field Superintendent position opened up again approximately one year later, Plaintiff again expressed interest, but was not interviewed. On that occasion, Hovensa placed another white employee, Jim Schuck, into the position. Plaintiff argues that Hovensa failed to promote him to the Tank Field Superintendent position on both of these occasions because of his race and/or national origin.

For purposes of summary judgment, Defendant assumes that Plaintiff has established a *prima facie* case of race and national origin discrimination. Defendant argues, however, that it had a legitimate, nondiscriminatory reason for not interviewing Plaintiff. Specifically, Defendant contends that Plaintiff told the interviewers during the Dock Superintendent interview that he did not want to commit to being on call around the clock. (ECF No. 82, pp. 7-9). Defendant contends that the Tank Field Superintendent position carried a similar requirement and, therefore, management presumed that Plaintiff would not want that job either. Id.

To rebut Defendant's legitimate reasons for its conduct, Plaintiff must provide sufficient evidence from which a factfinder could: 1) reasonably reject Defendant's explanation; or 2) believe that an invidious discriminatory reason was more likely than not a motivating cause of the employer's decision. Fuentes, 32 F.3d at 763-64. Specifically, Plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered [sic] legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Id. At the summary judgment stage, "the plaintiff need only raise doubt as to the legitimacy of the defendant's proffered reason for its adverse action; it need not prove its discrimination case." Andes v. N.J. City Univ., No. 10-2097, 2011 WL 1053619, at *2 (3d Cir. Mar. 24, 2011).

Plaintiff argues that Defendant's articulated reason – that Hovensa believed Plaintiff was not interested in the job – is riddled with inconsistencies and implausibilities and is otherwise

3

pretextual. (ECF No. 93, pp.16-22). I agree that Plaintiff has pointed to sufficient evidence of pretext to defeat Defendant's motion for summary judgment on this claim. As an initial matter, if the jury believes Plaintiff's testimony, he told Van Gurp and Robert Williams during the Dock Superintendent interview that he <u>was</u> interested in the Tank Field Superintendent position and that, indeed, he preferred that position to Dock Superintendent. In addition, Plaintiff applied for the Tank Field Superintendent position <u>after</u> the Dock Superintendent interview, further indicating his interest in that job. (ECF No. 94-4, p. 133). Moreover, Defendant admits that the job description does not even list 24/7 on-call status as a specific requirement. (ECF No. 94-4, pp. 124-25, 130-31; No. 94-19). Other evidence of pretext includes, *inter alia*, Plaintiff's testimony that Van Gurp's justification for not interviewing or selecting Plaintiff changed over time from "Michael McDonald having prior experience in a similar position" (a fact that Plaintiff disputes) to "Plaintiff demonstrating a lack of interest in the job." (ECF No. 94-18, p. 14). Plaintiff also points to the fact that Defendant again passed him over in favor of another white male, Jim Schuck, when the Tank Field Superintendent position opened up again one year later. On that occasion, Defendant did not interview Plaintiff even though Plaintiff previously had gone to Van Gurp and Human Resources to inquire and complain about why Hovensa had not interviewed him the first time around. (ECF No. 94-5, pp. 197-98). Plaintiff also points to interview notes suggesting that Schuck had expressed reluctance to commit to a 24-hour job, yet Defendant hired him anyway. (ECF No. 94-16, P's Ex. No. 6).

Viewing the above and all of the evidence in the light most favorable to Plaintiff, there is a genuine issue of material fact such that a reasonable jury could reject Defendant's stated reason and find it unworthy of credence. Consequently, summary judgment is not warranted on this claim.

## II. <u>Disparate Treatment – Disparate Pay – Title VII</u>

Plaintiff bases his pay discrimination claim on the fact that Frank Martin, the only Caucasian in Plaintiff's then-current position of Terminal Shift Superintendent, earned a

4

significantly higher salary than Plaintiff. Both parties agree that the McDonnell Douglas burden-shifting standard applies to Plaintiff's disparate pay claim. Defendant moves for summary judgment on this claim on the grounds that Plaintiff has no evidence Defendant's stated reason for Martin's higher pay is pretextual.[3]

Defendant does not dispute that Martin was the only white Terminal Shift Superintendent or that Martin earned a higher salary than Plaintiff (or any of the other Terminal Shift Superintendents). Specifically, the record evidence indicates that at the time Plaintiff filed this lawsuit, Martin's salary was $98,400 and Plaintiff's salary was $85,700, a difference of $12,700. Defendant argues, however, that it had a legitimate reason for paying Martin more than Plaintiff – i.e., that Martin had worked 15 more years in the Terminal Shift Superintendent position than Plaintiff and, therefore, had significantly greater experience in that position than Plaintiff. (ECF No. 118, Ex. B).

Although Plaintiff's evidence supporting the disparate pay claim is not his strongest, I find that it is sufficient under the appropriate legal standard to create a genuine issue of material fact as to pretext on this issue. Again, the pay records undisputedly show that Martin's salary was higher than all of the non-white Terminal Shift Superintendents, including Plaintiff. Even though this fact is pertinent to the *prima facie* case analysis, I also may look to it as evidence of pretext. See e.g., Burdine, 450 U.S. at 256 n.10 (evidence establishing *prima facie* case can also be evidence of pretext).[4] Other facts also cast doubt on Hovensa's articulated legitimate reasons for the disparity. For example, although Hovensa points to Martin's longer tenure in the position as the reason for the pay differential, it does not account for why Plaintiff started at the

---

[3] To the extent Defendant alternatively argues that Plaintiff's Complaint does not allege pay discrimination in the Terminal Shift Superintendent position (see ECF No. 112, at 2), such argument is without merit. The Complaint plainly avers that Plaintiff was "not paid the same nor given the same benefits as Non-West Indian, Non-black employees" in the Terminal Shift Superintendent position. Complaint ¶¶ 15-16, 35-36, 38. Plaintiff likewise has maintained an argument for discriminatory pay in that position throughout discovery in this case. See also infra, n.6.

[4] As set forth above, there is also evidence that the supervisor who determined Plaintiff's salary, Van Gurp, bore a discriminatory animus toward Plaintiff. See supra Section I.

bottom of the applicable pay scale despite having over 23 years of experience with the company and despite having experience "working up" in the Terminal Shift Superintendent position on prior occasions.[5]  The evidence also fails to explain adequately why Hovensa did not hire Plaintiff into the Terminal Shift Superintendent position prior to 2000.  Finally, it concerns me that Defendant originally argued that Plaintiff could not establish a *prima facie* case of pay discrimination because he lacked any evidence that Martin's salary was higher than his (ECF No. 82, at 10), when the *sole* basis for Plaintiff's lack of evidence was Defendant's unfounded refusal to produce Martin's pay records (despite Plaintiff's repeated requests).  Defendant's reasons for its failure to produce the pertinent material to Plaintiff are unpersuasive and its arguments in support of its initial summary judgment motion on this issue were specious at best.[6]

For all of these reasons, the record casts sufficient doubt on Defendant's stated reasons for the pay differential at issue to survive a motion for summary judgment.

## III. <u>Disparate Impact – Title VII</u>

Although not set forth as a separate count in his Complaint, Plaintiff argues in his opposition brief that his discrimination claim also survives under a disparate impact theory. See ECF No. 93 at 22-24.  In addition to disparate treatment claims, Title VII plaintiffs can make out

---

[5] Defendant's characterization of the $12,000+ difference between Martin and Plaintiff's salaries as "marginal" (ECF No. 123, p. 1) is unconvincing.

[6] Defendant's failure to turn over Martin's pay records forced Plaintiff to file a Motion for Sanctions seeking the information. (ECF No. 95). In its response to Plaintiff's Motion for Sanctions, Defendant argued that Martin's records as a Terminal Shift Superintendent were irrelevant because Plaintiff had referred in an Interrogatory response to the "Terminal Shift *Supervisor*," not the "Terminal Shift *Superintendent*" position.  (ECF No. 101, at 2-4).  Defendant further asserted that based on this interrogatory response, it did not understand Plaintiff to be pleading a claim for pay discrimination in the position of "Terminal Shift Superintendent" and, thus, had moved for summary judgment as to pay discrimination in the "Terminal Shift Supervisor" position only.  See id.  As Plaintiff noted in his reply to this response, Defendant's position was untenable in light of the fact that Terminal Shift Superintendent was the position both Martin and Plaintiff held at the time Plaintiff filed his Complaint; the Complaint plainly refers to discrimination in the Terminal Shift Superintendent position; and Plaintiff unambiguously clarified in his deposition testimony that he had intended to refer to Terminal Shift Superintendent, not Supervisor, in the Interrogatory response at issue.  (ECF No. 105, at 3-7 & Ex. 2).  Recognizing the disingenuous nature of Defendant's position, I ordered the company to produce the withheld information and file a supplemental motion for summary judgment on the pay discrimination claim.  (ECF No. 107).

a viable employment discrimination claim without alleging or proving discriminatory intent. Meditz v. City of Newark, 658 F.3d 364, 370 (3d Cir. 2011) (citing Griggs v. Duke Power, 401 U.S. 424 (1971)).  Under Title VII, "practices, procedures, or tests neutral on their face, and even neutral in terms of intent, cannot be maintained if they operate to 'freeze' the status quo of prior discriminatory employment practices." Id. (quoting Griggs, 401 U.S. at 430).

Such "disparate impact" cases proceed in two steps: "(1) the plaintiff must prove that the challenged policy discriminates against members of a protected class, and then (2) the defendant can overcome the showing of disparate impact by proving a 'manifest relationship' between the policy and job performance." Id. (quoting El v. SEPTA, 479 F.3d 232, 239-40 (3d Cir. 2007)).  This second step is called the "business necessity" defense and "serves as an employer's only means of defeating a Title VII claim when its employment policy has a discriminatory effect." Id.  The plaintiff can overcome the successful assertion of the business necessity defense "by showing that an alternative policy exists that would serve the employer's legitimate goals as well as the challenged policy with less of a discriminatory effect." Id. (quoting El, 479 F.3d at 240 n.9).

In his brief, Plaintiff cites to the alleged segregation of the Terminal and Marine Departments as evidence of disparate impact.  Specifically, Plaintiff states that the Marine Department employees were 90 percent white while the Terminal Department employees were 90 percent black.  Plaintiff argues that Hovensa's policy was to shift more responsibilities to the Port Captains in the Marine Department and send those Port Captains to special training not available to employees in the Terminal Department.  According to Plaintiff, this policy had a disparate impact on the Black Shift Superintendents in the Terminal Department because those employees were not eligible for certain promotions without access to the special training.  See ECF No. 93 at 23-24.  Defendant disagrees with Plaintiff's characterization of the Marine and Terminal Departments and argues that Plaintiff has neither pled nor supported a disparate impact claim.

After reviewing both parties' arguments, I find that the record cannot sustain a disparate impact claim in this case. To the contrary, as the responsive statements of fact to which Plaintiff cites (RSOF ¶¶14-16, ECF No. 94), make clear, Plaintiff's allegations, if anything, point to a pattern or practice of intentional race discrimination, not a facially neutral policy with a discriminatory effect. For example, in Responsive Statement of Material Fact 14, Plaintiff states that "over the many years he was employed in the Terminal Department, he observed Sloan Schoyer trying to change the color dynamics in the Terminal Department and promote all the White employees to higher grade levels and higher pay, while keeping all the Blacks in one segment of the Marine/Terminal Departments." ECF No. 94 at 29. He further cites, inter alia, his testimony that "HOVENSA avoided having the Terminal Shift Superintendents (90% Black) attain the position of Production Superintendents, so that no Black employee would be in the highest position over shift employees, including over the Port Captains (90% White). . . . HOVENSA's 'policy' of shifting the duties of the Terminal Shift Superintendents to the Port Captains, to avoid a Black employee as a Production Superintendent is in line with the statement made by Van Gurp that Black locals worked best under White supervisors." Id. at 30; see also, e.g., id. at 30-31 (contending that Schoyer declined the Terminal Shift Superintendents' requests for pay increases, while creating new higher-level positions and granting pay increases for White employees in the Marine Department); id ¶ 18 (claiming that the evidence reveals a long-standing pattern and practice by HOVENSA to segregate its employees and award higher pay and positions to its White employees to the detriment of the Black ones).

Similarly, elsewhere in his Brief in Opposition, Plaintiff insists that "HOVENSA *purposely* segregated the employees hiring White personnel for its Marine Department and Black employees for the Terminal Department, then granting the Marine Department employees higher grade levels for the same kind and level of work as employees in the Terminal Department." ECF No. 93 at 20 (emphasis added). Plaintiff focuses on the White common

8

director of both departments, Sloan Schoyer, and states that "[t]he Marine Department employees have been granted a higher-grade level so that HOVENSA can pretend to legitimately increase their pay and provide them with newly created promotions, while simultaneously refusing to do the same to the Black employees in the Terminal Department." Id. at 19. In short, Plaintiff has conflated the concept of the racially disparate impact of a facially neutral policy with the notion of a pattern and practice of purposeful discrimination. Because Plaintiff's testimony and other evidence focus on intentional discrimination and are inconsistent with a disparate impact theory, Defendant's motion for summary judgment on Plaintiff's disparate impact claim is granted. See Int'l Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 (1977). Cf. Chiang v. Schafer, Civ. A. No. 2000-04, 2008 WL 3925260, at **21-24 (D.V.I. Aug. 20, 2008) (borrowing and explaining the Title VII distinction between disparate impact and "pattern or practice" disparate treatment cases), aff'd, 362 F. App'x 252 (3d Cir. 2010).

### IV.     Hostile Work Environment – Title VII

Plaintiff further asserts the existence of a racially hostile work environment in violation of Title VII. "Racial harassment that creates an abusive and hostile work environment is actionable under Title VII." Greene v. Virgin Islands Water & Power Auth., No. 1:06-cv-11, 2011 WL 3032466, at *5 (D.V.I. July 22, 2011) (citing Patterson v. McLean Credit Union, 491 U.S. 164, 179 (1989)). To establish a claim for racially hostile work environment, a plaintiff must show that (1) he suffered intentional discrimination because of his race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the employee; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present. Id. (citing West v. Philadelphia Elec. Co., 45 F.3d 744, 753 (3d Cir. 1995)). No single factor is dispositive in a hostile work environment claim. Rather, Title VII is violated when discrimination is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Id. (quoting Harris v. Forklift

Sys., Inc., 510 U.S. 17, 21 (1993)).  "[M]ere statements that may offend an employee do not sufficiently infect the conditions of the workplace to warrant action under Title VII."  Id. at *6 (citing Harris, 510 U.S. at 21).

In this case, Plaintiff points primarily to Hovensa's alleged acts of intentional discrimination to support his hostile work environment claim.  See ECF No. 93 at 24-27 (citing, *inter alia*, Hovensa's refusal to interview or promote Plaintiff to the Tank Field Superintendent position; negative performance evaluations of Plaintiff by Van Gurp; and the alleged pay discrimination in the Terminal Shift Superintendent position).  Plaintiff also cites Van Gurp's alleged racist perspective that black employees work better for white supervisors as proof of a hostile work environment.  See id. at 25-26.  Even if all of the specific allegations of intentional discrimination to which Plaintiff points are found to be true, however, no reasonable jury could find that such discriminatory acts were so severe or pervasive to rise to the level of a legally actionable hostile workplace.  See, e.g., Greene, 2011 WL 3032466, at *6.  Accordingly, Defendant's motion for summary judgment as to Plaintiff's hostile work environment claim is granted.

## V.    Virgin Islands Civil Rights Act

In addition to his Title VII claims, Plaintiff alleges in Count II of his Complaint that Defendant's alleged discriminatory conduct violated Chapter 10 of the Virgin Islands Civil Rights Act, 10 V.I. Code §§ 1-11.  Complaint ¶¶ 44-46.  The Virgin Islands Civil Rights Act prohibits discrimination in employment on the basis of race, religion, color, or national origin.  See 10 V.I. Code § 3.  The Court of Appeals for the Third Circuit has held that an aggrieved employee has a private right of action for employment discrimination under these sections of the Virgin Islands Code.  See Figueroa v. Buccaneer Hotel, Inc., 188 F.3d 172, 177 (3d Cir. 1999); see also 10 V.I. Code § 7.

In its briefs, Defendant does not address Plaintiff's employment discrimination claims under the Virgin Islands Act apart from its arguments in opposition to Plaintiff's federal

discrimination claims. As set forth above, however, summary judgment is appropriate with respect to only a subset of Plaintiff's Title VII claims. Because Defendant does not differentiate between the Title VII and Virgin Islands Act claims and does not dispute that the same legal and evidentiary standards apply to both sets of claims, summary judgment is granted as to Count II of the Complaint only to the extent set forth in Sections I-IV, supra. Summary judgment as to Count II is denied in all other respects.

## VI. Defamation

Count IV of Plaintiff's Complaint alleges defamation against Hovensa. Complaint ¶¶ 50-52. To withstand a motion for summary judgment on a defamation claim under Virgin Islands law, the plaintiff must demonstrate a genuine issue of material fact as to four elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of "special harm" or the existence of "special harm" caused by the publication. Greene, 2011 WL 3032466, at *10 (citing VECC, Inc. v. Bank of Nova Scotia, 296 F. Supp. 2d 617 (D.V.I. 2003)). A statement is defamatory if "it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Id. (quoting Restatement (Second) Torts § 559).

Here, Plaintiff argues that Alberto Van Gurp and Robert Williams defamed him by informing Hovensa's Human Resources department that Plaintiff was not ready, willing, or up for the challenge of the increased responsibilities and duties required for a promotion. Pl.'s Br. at 28-29. Plaintiff further argues that Van Gurp made negative and untrue statements in his performance evaluations solely to disparage Plaintiff and that these negative performance evaluations detrimentally reduced his pay raises. Specifically, Plaintiff contends that the evaluations defamed his ability to organize and plan his work; stated falsely that Plaintiff was "reluctant to resolve people problem conflicts"; and stated that Plaintiff did not work very effectively with people and that he failed to initiate any improvements at work. Id. at 29.

11

Defendant argues that the defamation claim fails because the alleged statements are not defamatory as a matter of law and because the evidence fails to establish any of the remaining elements required to prove a defamation claim.

After careful review, I agree with Defendant that Plaintiff's defamation claim is fatally deficient. First, with respect to the alleged statements in Plaintiff's performance evaluations, there is no evidence that those statements were published to anyone other than Plaintiff. Thus, even if the statements were defamatory, which is questionable, Plaintiff's defamation claim based on those statements fails for lack of publication. Second, I find that Van Gurp and Williams' alleged statements to Human Resources and/or other employees that Plaintiff was not interested in the Tank Field Superintendent position or that he was "not ready, willing, or up to the challenge of increased responsibilities and duties required for a promotion," are not capable of defamatory meaning under Virgin Islands law. In this regard, I disagree with Plaintiff's unsupported assertion in his opposition brief that such statements naturally imply that Plaintiff was "unmotivated and not ambitious and even lazy." See ECF No. 93 at 30. Because the alleged remarks do not reflect negatively on Plaintiff's integrity or otherwise tend to harm his reputation in the relevant community, Plaintiff's defamation claim must fail.

For all of these reasons, Defendant's motion for summary judgment as to Plaintiff's Defamation claim is granted.

### VII.   Breach of the Duty of Good Faith and Fair Dealing

Count III of Plaintiff's Complaint alleges that Defendant breached its implied duty of good faith and fair dealing. Complaint ¶¶ 47-49. The implied covenant of good faith and fair dealing states that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Smith v. Virgin Islands Water & Power Auth., Civ. Action No. 04-148, 2008 WL 5071685, at *8 (D.V.I. Nov. 24, 2008) (quoting Restatement (Second) Contracts § 205). Virgin Islands courts have recognized a cause of action for breach of the duty of good faith and fair dealing in an at-will employment situation such as Plaintiff's. See Marcano

v. Cowpet Beach Resort, Inc., Civ. No. 570/1990, 1995 WL 217600, at *4 (Terr. Ct. V.I. Mar. 9, 1995) (citing Petersen v. First Fed. Sav. & Loan Ass'n of P.R., Inc., 617 F. Supp. 1039, 1042 (D.V.I. 1985)); Smith, 2008 WL 5071685, at *8. The courts, however, also "have recognized that a tension exists between the two doctrines insofar as the implied covenant imposes a duty of good faith and fair dealing on an employer who intended to retain total discretion over his or her employment relationships." Id. Thus, to succeed on the good faith and fair dealing claim, an at-will plaintiff must "prove acts by the defendant 'that amount to fraud, deceit, or misrepresentation.'" Id. (quoting Marcano, 1995 WL 217600, at *4).

After careful consideration, I find that dismissal of Plaintiff's good faith and fair dealing claim is inappropriate at the summary judgment stage. Although Defendant argues that Plaintiff has not shown that Hovensa engaged in any conduct amounting to fraud, deceit, or misrepresentation, I find that there are genuine issues of material fact on that question, particularly with respect to Defendant's alleged actions related to its alleged failure to promote Plaintiff to the Tank Field Superintendent position. For example, Plaintiff has pointed to evidence that, if believed, indicates that Hovensa misrepresented the importance of the 24/7 on-call requirement to Plaintiff. Such evidence includes the fact that the job descriptions for the Dock Superintendent and Tank Field Superintendent positions did not list such a requirement and the fact that Hovensa eventually hired a white employee, Jim Schuck, for the Tank Field Superintendent position even though notes from a prior interview of Schuck indicate that Schuck was reluctant to commit to such a requirement. (ECF No. 94-16, P's Ex. No. 6). Plaintiff also testified that Van Gurp falsely told him the first candidate hired for the Tank Field Superintendent position, Mike McDonald, had been given the position because he had previously managed a terminal department. (ECF No. 94-18, p. 14). Further, Hovensa claims it reposted the Tank Field Superintendent position opening after McDonald left, but could not produce any evidence of such a posting.

Because the record, viewed in the light most favorable to Plaintiff, contains evidence of fraud, deceit, or misrepresentation, Defendant's Motion for Summary Judgment as to Plaintiff's good faith and fair dealing claim is denied.

## VIII. Intentional Infliction of Emotional Distress

Count V of Plaintiff's Complaint alleges intentional infliction of emotional distress. Complaint ¶¶ 54. This Court has adopted the standard for intentional infliction of emotional distress set forth in Section 46(1) of the Restatement (Second) Torts: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability." Smith, 2008 WL 5071685, at *10 (quoting Restatement (Second) Torts § 46(1)). Recovery for intentional infliction of emotional distress "is limited to situations where 'the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'" Id. (quoting Restatement (Second) Torts § 46, cmt. d); see also Petersen, 617 F. Supp. at 1043 ("The plaintiff must make a showing that defendant's conduct was so outrageous that no reasonable person in a civilized society should be expected to endure it."). Whether the defendant's conduct is so extreme as to permit recovery is a question for the court. See Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988). As the Court of Appeals for the Third Circuit has noted, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." Smith, 2008 WL 5071685, at *10 (quoting Cox, 861 F.2d at 395).

Here, Plaintiff cites to Hovensa's allegedly discriminatory activity as evidence of intentional infliction of emotional distress. Plaintiff argues that his IIED claims "must be presented to a jury because Defendant has exhibited a pattern of racial hostility resulting in occupational segregation that directly affected Plaintiff's promotions, pay, and job assignments throughout his entire 35-year career at HOVENSA." Pl.'s Br. at 37. In particular, Plaintiff points

14

to: Schoyer's alleged pattern of granting the predominantly white employees in the Marine Department higher pay grades and levels than the predominantly black employees in the Terminal Department; Schoyer's alleged segregation of employees within the Marine Department; alleged unfair employment evaluations he received; HOVENSA's allegedly false statements that Plaintiff cannot commit to increased duties and responsibilities and is not interested in working harder; and Van Gurp's alleged statement that black employees work better under white supervisors. Id. at 37-39.

After careful review, I find that the alleged misconduct Plaintiff cites, whether viewed individually or as a whole, does not rise to the level of outrageousness necessary to support recovery for intentional infliction of emotional distress. Even if the evidence is sufficient to support a jury verdict on Plaintiff's discrimination claims, "discrimination alone does not state a claim for intentional infliction of emotional distress." Greene, 2011 WL 3032466, at *13. Similarly, evidence of an unpleasant work environment or an adverse employment action alone is insufficient to establish a claim. Id. Because Plaintiff has not presented sufficient evidence to create a jury question on his intentional infliction of emotional distress claim, Defendant's motion for summary judgment on that claim is granted.

## IX.     Negligent Infliction of Emotional Distress

Count V of Plaintiff's Complaint alternatively alleges negligent infliction of emotional distress. Complaint ¶ 55. To succeed on a negligent infliction of emotional distress claim, a plaintiff must show that he suffered physical harm as a result of the defendant's negligent conduct and that the defendant should have realized its conduct carried an unreasonable risk of causing such injury. Illaraza v. Hovensa, L.L.C., Civ Nos. 2008-CV-59, 2007-CV-125, 2010 WL 2342424, at *7 (D.V.I. June 7, 2010); Smith, 2008 WL 5071685, at *10 (citing Restatement (Second) Torts § 313). "Intentional conduct, however, such as demoting or terminating an employee, cannot serve as the basis for a claim of negligent infliction of emotional distress." Smith, 2008 WL 5071685, at *10. "A physical manifestation of emotional distress is a necessary

15

element to recover on a claim for negligent infliction of emotional distress." Fraser v. Kmart Corp., Civ. No. 2005-0129, 2009 WL 1124953, at *13 (D.V.I. Apr. 24, 2009) (citing Restatement (Second) Torts § 313).

Defendant argues that summary judgment in its favor on Plaintiff's negligent infliction of emotional distress claim is appropriate because Plaintiff has not offered any evidence showing that Hovensa's alleged actions placed him in danger or that he suffered the requisite physical harm as a result. Def.'s Br. at 18-19. In his opposition brief, Plaintiff fails to rebut Defendant's arguments or otherwise to address his negligent infliction of emotional distress claim. Because Plaintiff has failed to respond to Defendant's argument or otherwise to point to any record evidence supporting his negligent infliction of emotional distress claim, Defendant's motion for summary judgment on that claim is granted. See Greene, 2011 WL 3032466, at *13.

### X. **Punitive Damages**

In Count VI of his Complaint, Plaintiff asks for punitive damages, alleging that Defendant's actions were outrageous and done with a reckless disregard for Plaintiff's rights. Complaint ¶¶ 57-59. A claim for punitive damages, however, is not a distinct cause of action. See Illaraza, 2010 WL 2342424, at *7. Accordingly, Count VI of the Complaint is dismissed without prejudice to Plaintiff's ability to request punitive damages with respect to any of his remaining claims, if such damages are available and appropriate. See id.[7]

---

[7] To the extent Defendant argues that Plaintiff has not shown the requisite outrageous conduct to support an award of punitive damages, that question is one more appropriately addressed by a jury or on motion at trial.

DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| URIAS DESIR, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>HOVENSA, L.L.C., )<br>)<br>Defendant. ) | Civil No. 2007/97 |

AMBROSE, Senior District Judge

## ORDER OF COURT

THEREFORE, this 7th day of March, 2012, it is ordered that Defendant's Motion for Summary Judgment (ECF No. [82]) is granted in part and denied in part as set forth in the Opinion accompanying this Order.

It is further ordered that Defendant's Supplemental Motion for Summary Judgment (ECF No. [112]) is denied.

A pre-trial video conference is set for March 14, 2012, at 10:30 a.m. Eastern Standard Time (EST) in the Magistrate Judge's courtroom on the second floor of the courthouse.

BY THE COURT:

s/ Donetta W. Ambrose
Donetta W. Ambrose
United States Senior District Judge